## Garrity v. Myslewski

*Thomas Hollander* and *Gretchen A. Mundorff,* for plaintiff.

*Robert W. Murdoch,* for defendants.

LOUGHRAN, *J.,* January 5, 1995—

## HISTORY

This civil action for damages results from the alleged professional negligence of the defendant, Walter Myslewski, M.D., in his treatment of Patti Garrity at the Westmoreland Hospital in February of 1989. The trial began on July 11, 1994. During the course of the trial, with consent of the plaintiffs, a compulsory nonsuit was entered in favor of the defendant hospital. On July 21, 1994, the jury returned a verdict in favor of Patti Garrity and against the defendant, Walter Myslewski, in the amount of $800,000. Plaintiffs' motion for delay damages has been granted. The defendant moved for post-trial relief seeking a remittitur, a new trial or judgment n.o.v. In his brief in support of his motion for post-trial relief, defendant addresses only his request for a new trial, thus abandoning his requests for a remittitur and judgment n.o.v., *Amicone v. Shoaf,* 423 Pa. Super. 281, 620 A.2d 1222 (1993).

Oral argument regarding the post-trial motion was held on December 20, 1994. At the oral argument all counsel agreed that this court should proceed with its opinion regarding the post-trial motion in spite of the fact that an appeal had been filed in a supplemental matter in this case to the Superior Court of Pennsylvania. By way of further history, this court rendered an opinion on October 31, 1994 regarding the granting of a motion of the plaintiffs seeking delay damages. On December 2, 1994 the defendant filed his appeal involving that supplemental matter.

## OPINION

The defendant's first argument in support of his post-trial motion argues that the trial court erred in granting the plaintiffs' motion in limine which prohibited the introduction into evidence of the plaintiff-wife's prior problems of anorexia and bulimia. The defendant claims that this evidence was relevant to the issue of plaintiff's claim that after the surgery she suffered from anxiety.

Defendant had taken for use at trial the depositions of three physicians who treated Patti Garrity over the years prior to the incidents involved in this action—Robert DeJesus, M.D., William Levinson, M.D., and John Aber, M.D. Their depositions contain references to anorexia nervosa and bulimia which defendant wished to interject into the case. Plaintiffs, believing that this evidence was not admissible, moved the court in limine to exclude that testimony. The court granted the motion because the only reference by these three physicians to anorexia and bulimia is in their testimony that these conditions are noted in a 1983 hospital record. These diagnoses were not properly reached, are remote in time to the acts of the defendant of which complaint is made and are unrelated to the conditions of health resulting from defendant's conduct.

Dr. DeJesus made the entry of anorexia nervosa and bulimia in the 1983 hospital record. He testified that although he claims to have made the diagnosis of anorexia nervosa, he did not find the elements required for such a diagnosis. The missing criteria are:

—intense fear of becoming obese;

—a disturbance of body image;

—a weight loss of at least 25 percent of original body weight;

—a refusal to maintain body weight over a minimal normal weight for age and height;

—no known physical illness that would account for weight loss.

He did not find the five diagnostic criteria for bulimia. (DeJesus dep., pp. 25-33.) Though Dr. DeJesus made the so-called diagnosis in 1983, he saw Patti Garrity later in 1987 and in 1989, much closer in time to the culpable acts of the defendant and did not make those diagnoses. (DeJesus dep., pp. 37-38.)

Dr. Levinson's only reference to these conditions is to the DeJesus notation in the 1983 hospital record. Levinson did not make that diagnosis himself. In his deposition, he, too, testified that the hospital record did not contain all of the criteria required for the diagnosis of anorexia nervosa or bulimia. (Levinson dep., pp. 20-26.) He also said that there was never a time following that 1983 hospitalization that caused him to consider a diagnosis of anorexia nervosa and bulimia. (Levinson dep., pp. 27-28.)

The discussion of anorexia nervosa by Dr. Aber does not rise to the level of a finding that Ms. Garrity, in fact, suffered from those maladies. In the course of his deposition, Dr. Aber testified:

"The fifth diagnosis is anorexia nervosa by history. And I don't know where that was obtained because I never received that history from the patient. I'm not sure that I asked her. And I don't know who ascertained it, except in the past medical history part of the discharge summary, ... and there was also a question if the patient had anorexia nervosa at the time." (Aber dep., pp. 14-15.)

And he further testified:

"I already stated that I made no diagnosis of that (anorexia nervosa). I said that I read it off the, of the discharge summary and stating that she was admitted four years prior to 1987 for what appeared to be prolonged episodes of gastroenteritis. And there was also a question that the patient had anorexia nervosa at that time so that would have, by my math, been 1983 that somebody else had treated her before I ever knew the patient or knew of her." (Aber dep., pp. 29-30.)

The record demonstrates that there was no basis for a diagnosis of anorexia or bulimia. Moreover, even assuming the diagnoses were proper, it is not relevant to this action since it was found only on one occasion, many years prior to the time of the culpable conduct of the defendant, and has not been mentioned since that early time in 1983.

The defendant never offered testimony to demonstrate the relevance of these conditions to this case. Defendant made no offer of proof of any evidence that suggested that anorexia nervosa or bulimia plays any part in Ms. Garrity's present condition or is relevant to her claims. During discussion of plaintiffs' motion to exclude this evidence, the following was said:

"Mr. Hollander: Let me make this clear. I say this in my motion, I am not objecting to complaints she made about her stomach or anxiety in the past. I can't argue that is not relevant, but the anorexia is not related in any way. If they had someone to say the anorexia is relevant to this disorder that she now has....

"Mr. Murdoch: We don't have anybody that says that." (Tr. p. 25.)

The trial court was correct in excluding the testimony about anorexia nervosa and bulimia.

The second reason the defendant argues he is entitled to a new trial is because of the court's refusal to admit certain evidence of an abortion the plaintiff had undergone at an earlier age when she was single.

Initially, plaintiff's counsel, through a motion in limine, requested that evidence of plaintiff-wife's abortion and use of birth control pills while plaintiff was in her twenties be excluded. (Tr. p. 47.) As a result of the surgery plaintiff-wife will experience difficulty conceiving a child. Defense counsel for the hospital argued that this information was relevant because it bore on the issue of whether plaintiff-wife's allegation that she wants to have children was credible. The evidence of a previous abortion and her unwillingness to have a child while she was married indicates that she never wanted to have children, he further argued. The court reserved ruling on that matter. (Tr. p. 55.) During the trial the court determined that plaintiff-wife could be cross-examined on the issue of her abortion. (Tr. pp. 411-414.) The record reveals that during direct examination of Patti Garrity, the court interrupted the testimony and the following took place:

"The court: Will you step down for a minute. May I see counsel.

"(Sidebar conference)

"The court: For the record, you had asked me in a motion in limine to exclude any reference to abortion on the basis that it was so prejudicial. I now have a feel for the case different than I did in my chambers, and I think this subject of wanting to have children, I think is—she is the plaintiff, so I am going to deny the motion and allow him to explore that, but I want to give you the opportunity, if you want to, you can bring it up on direct. I think that I realize it's prejudicial, but she is the plaintiff, and it's an unusual element

of damage in the sense the way it's coming in. I do realize the difference, you know, before marriage and after marriage.

"Mr. Hollander: A decade in age.

"The court: Right.

"Mr. Hollander: She was 19 at the time and unmarried.

"The court: I still think it's an area that unfortunately is fair game." (Tr. pp. 411-412.) Then, after further argument about the issue the court said:

"The court: I think that's argument, I think it's argument, I think it's relevant in light of the fact of the claim. If you want to talk to her and bring it out yourself." (Tr. pp. 413-414.)

Plaintiff's counsel was then given the opportunity to advise Ms. Garrity of the court's ruling so that she would be aware of the decision to permit the line of questioning that had been held in abeyance since the trial began.

However, even though afforded the privilege and opportunity to inquire of Ms. Garrity about the abortion in 1983, defendant did not do so.

Then, when the deposition testimony of Dr. Conti was being offered, counsel for plaintiff moved to exclude Dr. Conti's reference to the stark history of the abortion. The following discussion occurred:

"Mr. Hollander: I would like to renew our objection to the inquiry about the pregnancy and abortion. Counsel for the defendant did not make any inquiry of the plaintiff about that.

"The court: Pardon me?

"Mr. Hollander: Counsel for the defendant made no inquiry of the plaintiff herself about that and to let it sit there....

"The court: You are putting me through an exercise for my next law school examination, because you never asked the question, so I assumed you bypassed the subject.

"Mr. Murdoch: No, your honor, I understood that I had the right to go into it. The motion in limine that you ruled upon was to exclude it from the deposition, and this is...

"The court: I thought the motion in limine, I don't remember but I thought the motion was to exclude it from the case.

"Mr. Hollander: It was.

"Mr. Murdoch: Specifically it was in the deposition obviously.

"The court: I didn't know that. Obvious to you, not to me.

"Mr. Hollander: I will tell you where it is, it is in the deposition because on cross-examination...

"The court: Deposition?

"Mr. Hollander: Dr. Conti's, this doctor.

"The court: You guys say obviously, it wasn't to me. I didn't know anything about it.

"Mr. Hollander: I want to make this point, that's why I am raising the motion again.

"The court: I thought I ruled on the motion in limine to allow it because she testified about her inability to have children, and so forth, and her desires. When I heard her testify I changed my mind, because I thought that she had opened herself to an inquiry by you, Bob, to an examination as to if she wanted children so bad. You had an opportunity, why did you give it up. You never asked the question, so I assumed you changed your mind in the middle, or a tactical matter thought the jury might look at you as a scamp for attacking

244

on such a subject and you laid off. So there is no question asked of her, the subject hasn't been introduced.

"Mr. Hollander: Here is the cross-examination, referring to the doctor's records of a previous pregnancy in 1983, and it just sits there with nothing else.

"The court: I don't know how it came in. Let me see it. Where is the question.

"Mr. Hollander: Page 35.

"The court: I don't think that the previous pregnancy in 1983 serves any legitimate purpose, although I thought it served a legitimate purpose in the cross-examination of the plaintiff in light of the claim, but the cross-examination here, or just to throw it in doesn't appear to have any relevance.

"Mr. Hollander: It has no relevance.

"The court: I don't know what the point of it is.

"Mr. Murdoch: Well, your honor, I believe if it's relevant to be brought into the case, Dr. Conti is here testifying as an expert witness on her behalf, and if you rule that it's relevant...

"The court: The way it's asked doesn't make any sense, she had a previous pregnancy and you get off the subject. There is no answer, so it's just like—it's like throwing in a case you beat your wife last week, didn't you. No answer, and then when you go to the jury, you heard me ask that question that he beat his wife, didn't he. There is no answer to the question, no reason for the question.

"Mr. Murdoch: Line 17 is the response, it says that's correct.

"The court: She had a previous pregnancy in 1983, that's correct.

"Mr. Murdoch: That's the answer.

"The court: I don't know whether she had an automobile accident, the child was aborted. I don't know whether she had somebody punch her in the stomach. She had an abortion. I don't know if she voluntarily aborted. Why inject the mystery pregnancy into the subject.

"Mr. Murdoch: Well, there was proper opportunity to cross-examine Dr. Conti in that regard.

"Mr. Hollander: It wasn't done.

"The court: I think it's improper, other than to blacken the reputation, or use it to imply whatever you want to imply from a simple question that doesn't follow with any relevancy, or any nexus to the case. Under these circumstances, I find it to be irrelevant and I am going to sustain the objection." (Tr. pp. 643-648.)

The court's ruling was proper not only because the evidence was not relevant, but also because the court has discretion to exclude evidence the probative value of which is outweighed by the danger of unfair prejudice to the party against whom it is introduced. *McDaniel v. Merck, Sharp & Dohme,* 367 Pa. Super. 600, 533 A.2d 436 (1987).

The defendant waived its opportunity to inquire of Patti Garrity about her pregnancy and abortion in 1983. He had the opportunity to inject the issue into the case at a time that its relevance could be explored and chose not to do so. Thus, with no basis to determine its relevance, and because of the potential for prejudice that may result, the court properly denied the defendant a second chance to inject this unrelated issue into the action.

Defendant next complains that the trial court committed prejudicial error in overruling his objections that the scope of the testimony from Stephen Goldstone,

M.D. and Dr. Mary Anne Murphy, was beyond that of their reports and that he was unfairly prejudiced by those rulings. However, the defendant fails to establish that the testimony of which he complains was beyond the fair scope of the reports of these experts. Nor does he demonstrate that he was prejudiced. Defendant objected to the following question to Dr. Goldstone and his answer:

"Q. With proper care, would there have been a chance or even a substantial chance that Patti Garrity's bowel would not have had to have been resected or cut, or maybe I should ask this the other way around. With the failure of proper care, did that increase the risk that her bowel would have to be cut and separated and put together, the resection anastomosis?

"A. Sure." (Tr. pp. 260-261.)

After the answer was given, the defendant objected and the court, referring to the report from Dr. Goldstone, made the following ruling:

"The court: I have my own marked. I know what to look for. Objection overruled. I think for the record on page four in paragraph two of the doctor's report that he indicates that he thinks delaying this operation; talks about the delay in the operation. The problem— instead of me getting into it, I am satisfied it's in the report. You were warned about it. The objection is overruled." (Tr. p. 262.)

The reference the court was making was to this paragraph of Dr. Goldstone's report, which graphically supports the ruling on this unfounded objection:

*"The patient went on to develop an intestinal obstruction with compromise of the small bowel.* I feel that the physicians should have better monitored her white blood cell count as a sign that bowel compromise

was occurring. *It would have been better to operate on this patient before the bowel necrosis had progressed this far.* Moreover, I feel that an abdominal x-ray earlier in the postoperative course might have helped in making the diagnosis sooner. Sometimes, it is appropriate to try and pass a long tube to alleviate the obstruction in the postoperative period. *If surgical treatment is felt to be necessary to treat a postoperative intestinal obstruction, then if it is done before bowel compromise can occur a resection will not be necessary. Once compromise has occurred and a resection is necessary, the operative morbidity and mortality increases dramatically.* This patient already had bowel ischemia by the time surgery was performed. Once the patient was taken back to surgery by Dr. Myslewski, the bowel was sufficiently diseased that the surgeon inadvertently tore it with his manipulation. The fact that the bowel tore implies that it was compromised. Dr. Myslewski, however, used this hole in the bowel as the site of his anastomosis. I feel that this was wrong, and a different site for the anastomosis should have been chosen. An anastomosis through compromised bowel is at a much greater risk to fail than if it is performed through healthy bowel." (emphasis added)

The defendant also argues that Dr. Goldstone should not have been permitted to testify about the obvious need for intravenous feeding in order to bypass the bowel and allow it to heal because of the failed anastomosis and the resulting fistula. The question to which the objection was raised is:

"Q. She was maintained on that hyperalimentation from the time it began in February through the surgery in July at Presbyterian Hospital, correct?

"A. Yes.

"Q. Why did she have to have hyperalimentation that entire time?

"A. Well they were trying to get the fistula to close by itself by putting the bowel at rest. The food isn't traveling through it, it's at rest.

"Q. Is that the result of the delay in the surgery and the failure of the anastomosis and the development of the fistula?

"Mr. Murdoch: Excuse me, may we approach the bench?

"The court: Yes." (Tr. pp. 264-265.)

The sidebar discussion which followed reveals the clear basis for the court's ruling on the objection to this inquiry:

"Mr. Murdoch: The doctor already testified he only examined the records for the hospitalization to April 21. We are into an area he has not reviewed the records. He was not involved as far as rendering any part of either of his reports to what occurred during this hospitalization from May 11 to May 30. I believe—I will raise this at this point, Tom, there are two other hospitalizations in June that he would be asked similar questions on, it occurred in June, and I will raise the objection at this time before we get to that area. I think it's beyond the scope of his report. I don't think he should be entitled to give an opinion tying in treatment for those hospitalizations that he hasn't reviewed, hasn't put in his report.

"The court: All he is doing is causally relating these subsequent damages. He's asking are these hospitalization and surgeries that were in affect repair surgeries of your doctor's surgery necessitated by the doctor's negligence. That is all he is asking.

"Mr. Murdoch: I know he is asking that, your honor, but that wasn't part of his report, either report. He stopped, he didn't review these records. Now he is asked to tie into what my doctor did, and it's improper.

"Mr. Hollander: Your honor, first of all I can lay the foundation. He was aware of these because of the records and references to them, but I believe he talks about in his report increased risk of morbidity, and these are—these are encompassing the problems. I think there is nothing surprising to this defendant. I can't believe they are surprised. This is related.

"Mr. Murdoch: It's not in the report.

"Mr. Hollander: It is covered by the report.

"Mr. Murdoch: I disagree.

"Mr. Hollander: It's covered when he talks about this increases the problems. These are the problems he is talking about.

"Mr. Murdoch: Without review of the records.

"The court: Well, objection overruled. First off I think it's implicit in the report. If the surgeon in his opinion did her harm, to repair that harm is causal relationship of what happened, has to be. I don't think it's any surprise, but he goes on in general terms in his report that once the fistula developed, he is summarizing. You have to take this in context, the incidence of other morbidities increases dramatically. So he is talking about other morbidities, however you want to pronounce it, and I think that this is the problem that followed the negligent surgery, and he is asking are these causal related. The objection is overruled." (Tr. pp. 265-268.)

The report of Dr. Goldstone contains the following paragraph with an explicit reference to the subject of the question:

"Once the fistula developed, the incidence of other morbidities increases dramatically. *The surgeons were correct in trying to close the hole spontaneously by putting the bowel at rest with hyperalimentation. Once the fistula did not close, then surgery with resection was the only option.* The time they waited was not excessive." (emphasis added)

This claimed ground for a new trial is unfounded! The rulings on the remaining objections raised by the defendant to the scope of Dr. Goldstone's testimony, even if erroneous, are not significant to the outcome of the case and should not be viewed as prejudicial error sufficient to warrant a new trial. Moreover, those objections relate more to the question of what weight is to be given to the testimony, rather than to its admissibility.

The defendant complains that Dr. Murphy should not have been permitted to comment on the costs of future treatment for the anxiety disorders from which Ms. Garrity suffers. Dr. Murphy testified that after the legal proceedings are over, plaintiff could benefit from treatment at a non-hospital residential facility. (Tr. pp. 516-518.) Dr. Murphy was asked about the costs and defendant objected that the costs weren't spelled out in her reports. (Tr. p. 518.) The court overruled the objection stating:

"The court: I don't know what your objection is. There is a sentence on page three of this report as follows: 'We discussed the possibility of her becoming involved in treatment in an inpatient setting specializing in problems such as hers.' So he has told you what she is going to testify about. Objection overruled." (Tr. pp. 520-521.)

And in Dr. Murphy's report, the following appears:

"It is clear that from an emotional standpoint Ms. Garrity is substantially worse than when I saw her previously. *It is also clear that outpatient treatment is unlikely to be successful in ameliorating her symptoms, given her difficulty getting in for treatment and her near panic reaction to the suggestion of psychotropic medication.* It is also clear that Ms. Garrity is very distressed by the severity and persistence of her emotional symptoms, and would very much like to lessen her distress and be able to resume a more active and enjoyable lifestyle. *We discussed the possibility of her becoming involved in treatment in an inpatient setting specializing in problems such as hers, where she could be placed on appropriate psychotropic medication under supervision. She expressed a willingness to undertake whatever treatment would help her.* However, I recommended that she defer such treatment until her legal proceedings are over, as it is very difficult to come to an emotional resolution of a traumatic event or events such as she experienced while being aware that in the future she will have to relive the entire experience during the legal proceedings." (emphasis added)

Surely defendant didn't believe at the time of trial that health care is provided free of charge. His services aren't and neither are those of a treatment facility, a psychologist or a psychiatrist. He can't be surprised that there are charges for these services. Also, it is important to remember that the defendant chose not to retain an expert witness to defend against the evidence of the plaintiff's emotional harm. Had he chosen to defend against this evidence he would have had an expert with whom he could readily validate the testimony about these costs. He should not now be allowed to complain about surprise regarding a detail of one

of the problems covered in Dr. Murphy's report, none of which he chose to challenge with countervailing evidence anyway. Moreover, the costs involved are minor in relationship to the total expenses incurred in this matter and the admission of that evidence, even if erroneous, is not such substantial harm that warrants a new trial. (Tr. pp. 521, 524-526.)

Defendant's last assignment of error in his brief is based upon the court's decision to grant plaintiff's seventh requested point for charge. His argument is addressed to the point as proposed by the plaintiff. However, the court did not instruct the jury in accordance with that request, but modified it. In its modified form, defendant's argument is moot. The court will not address this issue because defense counsel indicated at oral argument that it no longer intended to pursue this argument as a reason for a new trial.

The court therefore will make the following order:

## ORDER

And now, January 5, 1995, after oral argument and consideration of the within matter, it is hereby ordered, adjudged and decreed that the defendant's post-trial motions are denied.